THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* MARIANNE BLIXT *et al.*, Defendants-Appellees.

Third District   No. 75-83

Opinion filed April 14, 1976.

BARRY, J., specially concurring.

John D. Sloan, State's Attorney, of Aledo (Edward N. Morris, of Illinois State's Attorneys Association, of counsel), for the People.

Dwight L. Shoemaker, of Aledo, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal by the State from an order of the Circuit Court of Mercer County granting the motion to suppress certain contraband (cannabis) which was seized by police officers. The motion to suppress was granted on the ground that the police officers had no probable cause to search the area in which the cannabis was found.

Defendants Harland Blixt and Marianne Blixt, husband and wife, were charged with possession of 2.5 to 10 grams of marijuana in violation of section 4(b) of the Cannabis Control Act (Ill. Rev. Stat. 1973, ch. 56½, par. 704(b)). They moved to suppress the introduction of marijuana as evidence and contended it was acquired by the police as a result of an illegal search (see Ill. Rev. Stat. 1973, ch. 38, par. 114—12(a)(1)). The trial court granted the motion, from which order the State appeals (Ill. Rev. Stat. 1973, ch. 110A, par. 604(a)(1)).

From the record it is shown that on the evening of December 3, 1974, David and Loretta Sward reported to authorities that their rural Mercer County home had been burglarized. Sheriff's deputies investigated the area and then went to the home of Mrs. Sward's parents, the Boughtons, who lived down the road. The defendants were present at the Boughton home since they were friends of the Swards.

Deputy Thompson and the Swards left at about 10:15 p.m. in the squad car to return to the Sward home and defendants followed in their Volkswagen. The deputy stopped some distance down the road and asked defendants not to go along as they might get in the way of the investigation. The defendants complied with the deputy's request and returned to the Boughton home.

At approximately 11:15 p.m., the Blixts again started for the Sward home, as they were concerned as to what was taking so long. The Swards did not have a telephone. As they approached the Sward home, they saw several police cars, so they just drove on. Deputy Thompson saw the Blixts drive by and went after them, stopping them a couple of miles farther down the road.

Deputy Thompson testified that while he and the Swards were at the latter's home, Mr. Sward had mentioned that a pair of small, wooden cabinet stereo speakers were missing, among other items. Thompson remembered having seen a similar pair of wooden speakers in the back seat of the Blixt car earlier in the evening. Also, in the course of the investigation of the Sward burglary, Thompson and the other officer came across some rolls of shag carpeting and other articles which had previously been stolen in another burglary. The Swards were arrested as a result of that discovery.

Thompson testified he thought of the speakers in the rear of defendants' car when they drove by, and knew, that the Blixts were friends of the Swards, with perhaps an implication that defendants had some connection with the stolen property found in the Sward home.

When Deputy Thompson stopped the Blixts in their car, he asked if they would get out and if he could look at the speakers. They consented to have him look at the speakers, but in response to a question said they had purchased the speakers from a friend who could verify that fact. After Thompson had briefly inspected the speakers he began to shine his flashlight elsewhere in the car and asked if he could look around. He then noticed what he described as a seed or seeds on the rear floor which he thought might be marijuana seeds and asked for permission to search the entire vehicle. Defendants refused consent, but Thompson nevertheless continued his search, eventually attempting to open the glove compartment. When it would not open readily the deputy asked for and got the keys from Harland Blixt. He opened the compartment and found a small wooden box measuring 4″ x 6″ x 2″. Marianne Blixt identified the box as belonging to her and responded negatively when Thompson requested permission to open it. She said that it contained personal items. Thompson nevertheless opened it and found marijuana, which is the basis of the charge in the instant case and of the motion to suppress.

The trial court expressed grave doubt about the officer's right to stop the Blixt car in the first place, and thought it was significant that the officer did not inform the Blixts that they had the right to refuse the search. The court found that the consent to examine the speakers did not amount to consent to search the entire car and that the discovery of a few seeds on the floor which were suspected to be marijuana seeds was not sufficient cause in that rural area to authorize a further search of the car. For such reasons, the court granted the motion to suppress.

The State, in attempting to justify the stopping of the Blixt vehicle, contends it was based on probable cause or at least reasonable suspicions as required for temporary questioning (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L.Ed.2d 889, 88 S. Ct. 1868), and as applied to motor vehicles (*United States v. Felix Humberto Brignoni-Ponce* (1975), 422 U.S. 873, 45 L. Ed. 2d 607, 95 S. Ct. 2574). They also assert that the Blixts consented to examination of the speakers, and contend that the marijuana seeds were found in the course of that examination.

It appears from the record that the legal justification for the stop of the Blixt automobile was questionable. The officer knew that the Blixts had a pair of speakers in the back seat similar to those reported stolen by the Swards, but he also knew that the Swards and Blixts were friends, and that they had been together at the Boughtons after the Swards had reported the burglary and were awaiting the arrival of the police. It could

hardly have been a reasonable conclusion that the couple would steal their friends' speakers and then parade them around in plain view in front of the friends while the police were at the scene investigating the incident. Officer Thompson apparently acted in part on the fact that he just discovered stolen property at the Sward premises while investigating a burglary there, but it is not clear from the testimony if this were the case, or why he might have thought this was a sufficient basis to stop the Blixts as they drove by. In any event, the speakers were not taken from the Sward home nor were they stolen.

Assuming that the officer was inspecting the speakers permissibly, the record does not clearly show that he came across the seed or seeds on the rear floor in the course of inspecting the speakers. The trial court concluded that the discovery of the seed or seeds as shown by the testimony did not give him probable cause to conduct a full-blown search of the vehicle, and certainly not of the box which was taken from the glove compartment.

The courts have allowed searches where a well-trained officer smelled an odor of marijuana smoke when stopping the vehicle for other reasons. (*People v. Loe* (3rd Dist. 1973), 16 Ill. App. 3d 291, 306 N.E.2d 368; *People v. Wolf* (3rd Dist. 1973), 15 Ill. App. 3d 374, 304 N.E.2d 512, *aff'd*, 60 Ill. 2d 230 (1975).) There was no smelling of marijuana in the instant case and we believe that the trial court could properly conclude that the discovery of a few tiny seeds on the floor of the back seat of a car in a rural area would not in itself give the officer a sufficient probable cause to believe that there was marijuana somewhere else in the vehicle. From the record it is not established specifically that the seeds were in fact marijuana seeds or, if they were marijuana seeds, that they were not sterile (and thereby would not be unlawful).

On the basis of the factual situation existing in the instant case, we believe that the trial court could reasonably find no justification for search of the box located in the glove compartment, which belonged to the defendant Marianne Blixt, and which she refused to have the officer open, but which he opened despite her refusal. On the basis of the record, the issue was sufficiently doubtful and makes us reluctant to reverse the decision of the trial court, which suppressed the evidence as being taken pursuant to an illegal search.

For the reasons stated, therefore, the judgment of the Circuit Court of Mercer County is affirmed.

Affirmed.

STOUDER, P. J., concurs.

Mr. JUSTICE BARRY, specially concurring:

I agree fully with the result reached by the majority in this case, but feel compelled, however, to comment briefly upon the validity of the inital stop of the Blixt vehicle which the majority labels as "questionable."

Deputy Thompson's testimony was that in investigating the burglary at the Sward's home, Mr. Sward mentioned that a pair of small wooden cabinet stereo speakers were missing, among other items. Thompson stated that at that point in time he remembered having seen a similar pair of speakers in the back of the defendants' car at the Boughton's home. Incidental to his investigation of the Sward burglary he uncovered evidence that the Swards themselves were suspected burglars, and many stolen articles were discovered.

When the defendants' car was observed driving by the Sward home in direct contravention of police instructions that they stay away, Deputy Thompson testified that he thought of the speakers he had previously seen in defendants' car. I believe the connection between the speakers that Mr. Sward reported as having been stolen from his home and the similar speakers the officer observed in the Blixt auto was sufficient justification to stop the Blixts for further investigation. It could reasonably be inferred from the circumstances presented to Officer Thompson that the Blixts had committed an offense in connection with the Sward burglary. Under the Illinois statute allowing temporary questioning without arrest (Ill. Rev. Stat. 1973, ch. 38, §107—14) the police officer was justified in stopping the Blixts' vehicle. The Blixt car being a fleeting mobile target presented a strong likelihood that if they were not then stopped the suspected stereo speakers could be removed and secreted from any further police investigation. These exigent circumstances justified a stop of the defendants on the basis of probable cause to believe that their moving vehicle contained the fruits of a recent burglary which might be destroyed if the stop and investigation was not conducted forthwith. (See *Carroll v. United States*, 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280 (1925).) I, therefore, believe the initial stop of the defendants' automobile and investigation concerning stolen speakers was legally justified. The further police action in searching the entire vehicle including the locked glove compartment was not justifiable, and I concur with the disposition of those aspects of the case as presented in the majority opinion.