THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
LAWRENCE D. JAMES *et al.*, Defendants-Appellees.

Second District (1st Division)   No. 75-483

Opinion filed December 3, 1976.

Gerry L. Dondanville, State's Attorney, of Geneva (Phyllis J. Perko, of Illinois State's Attorneys Association, of counsel), for the People.

Peter Donat, of Batavia, and Robert A. Chapski, of Elgin, for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The State appeals from an order suppressing evidence which was entered at a preliminary hearing of a felony case. (See Ill. Rev. Stat. 1975, ch. 110A, par. 604(a)(1).) It contends that the associate judge who entered the order was without jurisdiction to try the offense and therefore was without power to enter the suppression order. It alternatively contends that based on the evidence the court erred in entering the suppression order.

The defendants were charged with possession of more than 30 grams of a substance containing cannabis (Ill. Rev. Stat. 1975, ch. 56½, par. 704(d)), a Class 4 felony (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(b)(5)). Under Supreme Court Rule 295 (Ill. Rev. Stat. 1973, ch. 110A, par. 295) the chief judge of a judicial circuit may assign an associate judge to hear "any matters except the trial of criminal cases in which the defendant is charged with an offense punishable by imprisonment for more than one year." The State argues, however, that Supreme Court Rule 295 is not applicable to suppression hearings because the legislature has expressly provided that motions to suppress evidence "shall be made only before a court with jurisdiction to try the offense." Ill. Rev. Stat. 1975, ch. 38, par. 114—12(d).

■■ We do not agree with the contention of the State that motions to suppress are excepted from the application of Supreme Court Rule 295 because of the express legislative enactment in section 114—12(d) that motions to suppress shall be made only before a court with jurisdiction to try the offense. As the defendant points out, the legislature has also enacted section 109—1(b)(3) of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 109—1(b)(3)) which states that a judge without jurisdiction to try the offense may conduct preliminary hearings. Yet another enactment provides that during preliminary hearings the defendant may move for an order of suppression. See Ill. Rev. Stat. 1975, ch. 38, par. 109—3(e).

We do not decide whether there is, in fact, any conflict between the relevant provisions of the Code of Criminal Procedure and Supreme Court Rule 295, for we conclude that in any event the Supreme Court Rule is controlling on the issue before us. Ill. Const. 1970, art. VI, §8; Sixth Illinois Constitutional Convention, 6 Record of Proceedings 995-96 (1972); *cf. People v. Taylor*, 50 Ill. 2d 136 (1971).

■■ It should first be noted that the order entered on the motion to suppress evidence did not constitute a "trial" of the felony case within the terms of Supreme Court Rule 295. The ruling on the suppression motion "is concerned only with evidence that has been illegally obtained. The trial judge, in ruling upon a motion in advance of trial, is in no position to determine the impact of the suppression of a particular item of illegally obtained evidence upon the prosecution's case." (*People v. VanDeRostyne*, 63 Ill. 2d 364, 368 (1976).) This distinguishes the case of *People v. Hargraves*, 28 Ill. App. 3d 560 (1975), relied upon by the State. In *Hargraves*, the court held that under Supreme Court Rule 295 a chief judge could not assign an associate judge to accept a plea of guilty to a felony charge because the associate judge had no authority to terminate the felony case on its merits.

■■ Further, associate judges possess the full subject matter jurisdiction which resides in the unified circuit court. (See Ill. Const. 1970, art. VI; *cf. People v. Gilmore*, 63 Ill. 2d 23, 26 (1976).) In the case before us there is nothing in the record to contest the fact that the case was properly assigned by the chief judge to the associate judge for the purpose of conducting a preliminary hearing. (See *Charleston National Bank v. Muller*, 16 Ill. App. 3d 380, 384 (1974).) In the course of that assignment the associate judge was authorized under section 109—3 of the Code of Criminal Procedure, an area in which the supreme court has not exercised its rule making power, to hear the motion to suppress evidence.

We also conclude that the suppression order was properly entered in view of the record. The judge found that there was no showing of probable cause for the search of the automobile in which the cannabis was found and we agree.

The officer testified that he was on routine patrol in a residential area of Aurora Township shortly after midnight when he noticed the car involved. Although there were no other vehicles in the vicinity the officer testified that he considered that the car was obstructing traffic because the tires on the passenger side were on the gravel shoulder of the avenue and those on the driver's side were on the pavement. He admitted his patrol car could easily have passed the vehicle and that there was no other traffic in the vicinity. The officer testified that the tail lights of the auto were off; that he approached the vehicle from the rear in his car and the car drove away. At this point the officer turned on the red lights of the squad car and signaled for the vehicle to stop because, as he testified, he "wanted to check the car out and find out what the occupants were doing," at that hour of the morning. At this time the officer radioed for a license check on the car although he did not receive a reply until the car was stopped when it was established that defendant Valadez was the registered owner. After the officer signaled, the sedan turned into a driveway and stopped. The

officer approached the driver's side of the vehicle on foot and as he approached he looked into the back seat. From the illumination provided by his spotlight he saw a can of beer lying on its side on the floor but could not tell if it were open or closed. The officer signaled for his partner to join him and asked defendants to step out of the car. While they were out the officer said he undertook a search with his flashlight for open liquor. He found a can lying on its side to be open containing a small amount of beer and found two other cans of open beer in the back seat. He then continued the search looking under the front seat of the automobile. Under the passenger's side he found a brown paper bag which contained a brick of cannabis weighing approximately 408 grams. The officer then placed defendants under arrest.

■■ Although it appears from the officer's testimony that he may have entertained the notion that defendants' auto was obstructing traffic, the record does not contain facts which reasonably support such an inference. Defendants' auto was parked to one side of the street so as to not impede passing traffic and the driver moved his vehicle as soon as he saw a car coming. Further, the State is unable to specify any section of the Motor Vehicle Code or municipal ordinance which defendant may have violated.[1] Thus, the trial court's conclusion that there was no probable cause to believe a traffic law was violated is reasonable and the trial judge's finding should be sustained. *People v. Adkins*, 28 Ill. App. 3d 342, 344 (1975); *People v. Blixt*, 37 Ill. App. 3d 610, 612-13 (1976).

In a variety of cases following *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), information not amounting to probable cause has been held to justify a forcible stop of a motor vehicle. See *Adams v. Williams*, 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921, 1924 (1972); *United States v. Brignoni-Ponce*, 422 U.S. 873, 45 L. Ed. 2d 607, 95 S. Ct. 2574, 2580 (1975); *State v. Ochoa*, 112 Ariz. 582, 544 P.2d 1097 (1976).

■■ These cases by analogy to *Terry* only permit a forcible stop of a motorist when the officer is able to point to specific and articulable facts which when taken together with rational inferences reasonably warrant suspicion that a crime is being committed, has been committed, or is about to be committed. This requirement is deemed necessary to prevent the police from having absolute discretion to intrude into the lives of the occupants of motor vehicles. To permit such discretion would tend to preclude judicial review of the actions of police and remove a buffer which has traditionally existed between the citizen and the police officer. (*State v. Ochoa*, 112 Ariz. 582, 544 P.2d 1097, 1100 (1976); *Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875, 878-79 (1973);

---

[1] The State cites Ill. Rev. Stat. 1973, ch. 95½, par. 11—1301, but that statute does not apply in residential areas. *Duncan v. Fisher*, 101 Ill. App. 2d 213, 216 (1968).

*People v. Ingle*, 36 N.Y.2d 413, 330 N.E.2d 39, 43 (1975); *Johnson v. United States*, 333 U.S. 10, 92 L. Ed. 436, 68 S. Ct. 367, 369 (1948).) We conclude that for such a stop to be justified the circumstances must allow the police to reasonably infer that the suspects were committing, were about to commit, or had committed a crime. (*People v. Schlottman*, 37 Ill. App. 3d 62, 64-65 (1976).) For the reasons noted previously, it is evident that the record does not reasonably support such an inference.

■■ The officer also stated he wished to "check the car out." This raises the related issue of whether the statutes which require a motorist to exhibit his driver's license and vehicle registration to a police officer will justify an arbitrary stop of a motorist for the purpose of inquiring whether the driver is licensed and his vehicle registered. (Ill. Rev. Stat. 1975, ch. 95½, pars. 6—112 and 3—411; *cf. People v. Wolf*, 60 Ill. 2d 230, 232 (1975).) This court, however, has long held that the exhibition statutes may not be employed as a subterfuge to obtain information unrelated to the licensing requirement. *People v. Harr*, 93 Ill. App. 2d 146, 150 (1968). See also *People v. Lilly*, 38 Ill. App. 3d 379, 382 (1976).

Several jurisdictions have adopted similar positions by specifically requiring an officer to have a founded suspicion that the driver is in violation of the motor vehicle code before he may use the exhibition statutes to stop an individual motorist. (*State v. Ochoa*, 112 Ariz. 582, 544 P.2d 1097, 1100 (1976); *People v. Ingle*, 36 N.Y.2d 413, 330 N.E.2d 39, 42-44 (1975); *Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875, 878 (1973).) Apart from stops conducted by nonarbitrary, uniform and systematic inspection the New York Court of Appeals has defined the degree of founded suspicion required to support a forcible stop of an individual motorist:

> "[T]he factual basis required to support a stop for a 'routine traffic check' is minimal. An actual violation of the Vehicle and Traffic Law need not be detectable. For example, an automobile in a general state of dilapidation might properly arouse suspicion of equipment violations. All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion' (*Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, *supra*)." *People v. Ingle*, 36 N.Y.2d 413, 420, 330 N.E.2d 39, 44 (1975).

The circumstances surrounding the stop in this case do not indicate that the officer's suspicions were properly aroused. Nothing in the record indicates that the officer's stop was occasioned by anything more than "mere whim, caprice or idle curiosity."

However, even if the record did not so clearly establish improper

purpose on the part of the officer, the trial judge would be permitted to resolve conflicts in the evidence on the basis of the credibility of the testimony. *People v. Adkins*, 28 Ill. App. 3d 342, 344 (1975).

We therefore affirm the judgment.

Affirmed.

GUILD, P. J., and RECHENMACHER, J., concur.