THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
DAVID LEE, Defendant-Appellee.

Third District    No. 79-455

Opinion filed March 3, 1981.—Rehearing denied April 6, 1981.

STOUDER, J., dissenting.

Edward Petka, State's Attorney, of Joliet (John X. Breslin and Rita Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellee.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

This is an appeal by the State from orders of the Circuit Court of Will County which suppressed evidence found in the apartment of the defendant, David Lee, as well as his confession.

The defendant was charged with rape, home invasion, burglary and aggravated battery. On February 26, 1979, at 8:14 p.m., deputy sheriff Jencons was advised by police radio that there was a prowler on Moore Street in the city of Joliet. Another deputy arrived at the area involved at the same time as Jencons did, and they observed the defendant running from a building. The defendant was arrested and searched. A diver's

knife was found on his person. The defendant told the officers that his name was Michael. Sergeant Waters arrived at the scene and advised the defendant of his constitutional rights. A search of an apartment building located at 1911 Moore disclosed pry marks on a number of doors. A credit card bearing the name of the defendant was found in the area where he had been apprehended.

One of the officers asked the defendant if they could all wait in his apartment until some additional officers arrived and the defendant granted this request. While in the apartment a consent to search form was prepared and after the defendant read it he then signed it. A brief search of the apartment was made, and the defendant was transported to the sheriff's office.

The defendant was again advised as to his *Miranda* warnings and then interviewed by Officers Downey and Rapp. During this interview the defendant admitted his involvement in several burglaries and told the officers that some of the proceeds from these burglaries were located in his apartment. It was the testimony of witnesses for the State that the defendant asked them when they were going to return to the apartment to search for these items. This interview of the defendant commenced at approximately 10:15 p.m. on the night of his arrest and apparently was concluded at approximately 3:30 a.m. on the following morning. While the record in this case does not set forth a crystal clear time sequence of the events, it is apparent that the officers conducted a second search of the defendant's apartment at approximately 2:30 a.m. During oral argument of this appeal counsel for both parties agreed that the search was conducted from four to five hours after the first search.

During the second search of the defendant's apartment, among the items of evidence collected was a shirt with one missing button. The defendant was told that a button matching those on the shirt was found at a Harris residence where a rape had occurred. The defendant then confessed that he had committed the rape. At a subsequent interview the defendant signed a written consent authorizing the search of his vehicle.

The testimony of the defendant differed from that presented by the State, and the most pertinent difference was to the effect that even though he acknowledged that he had signed a written consent form for the search of his apartment, it was his understanding that the search would be conducted in his presence. He also testified that he gave the keys to his apartment to one of the officers.

The threshold and precise question presented in this appeal is whether the second search of the defendant's apartment was proper.

■■ It is well established that one may consent to having his person or property searched by police officers. (*Zap v. United States* (1946), 328 U.S. 624, 90 L. Ed. 1477, 66 S. Ct. 1277.) Such consent, however, must be

proved by clear and positive testimony and there must be no duress or coercion, actual or implied, and the prosecutor must show a consent that is unequivocal, specific, freely and intelligently given. (See *People v. Kaigler* (1962), 368 Mich. 281, 118 N.W.2d 406.) In the instant case the defendant does not contend that the consent given by him was other than voluntarily and understandingly given. He quarrels not with the first search of his apartment, but claims that his consent did not authorize or permit the second search of the premises.

■■ We recognize the general rule of law that except in unusual circumstances a consent to search may be said to be given upon the understanding that the search will be conducted forthwith and that only a single search will be made. See 2 LaFave, Search and Seizure 633 (1978), and *People v. Nawrocki* (1967), 6 Mich. App. 46, 150 N.W.2d 516, *cert. denied* (1967), 389 U.S. 942, 19 L. Ed. 2d 296, 88 S. Ct. 304.

■■ After an examination of the circumstances surrounding the defendant's signing the consent to search form and the subsequent searches, we conclude that the second search was proper. The defendant signed a blanket, comprehensive consent form. Contrary to the assertion of the defendant that the first search of the defendant's apartment was a comprehensive one, the record reflects an opposite conclusion. Four officers and the defendant were present, and the first search lasted from 10 to 20 minutes. We deem such a time span classifies the search to be a brief one. The State produced testimony that the defendant agreed to the second search, and there was further testimony that subsequent to the first search the defendant admitted his involvement in several burglaries and informed the officers that some of the proceeds of these burglaries were located in his apartment. There was further testimony that the defendant queried the officers as to when they were going to return to his apartment. During the suppression hearing the defendant's testimony did not unequivocally deny the testimony of the officers but was that although he agreed to a search, it was his understanding that none would be conducted outside his presence. Clearly, the second search was conducted while the defendant was incarcerated, but we deem it noteworthy that the defendant gave the key to his apartment to the officers, never requested its return, and that after the complained-of second search he again executed a consent-to-search form, to wit, of his automobile. An examination of the circumstances supports the conclusion that the defendant was a most cooperative criminal suspect and that he ceased being cooperative when he realized such an attitude had involved him in a rape offense to which he confessed.

The defendant complains of the time span between the first and second search. In a case which presents a search situation strikingly similar to the one in the instant case, the supreme court of the State of

Georgia held a second search of a defendant's room to be legal which occurred 4 to 4½ hours after a prior search to which the defendant had consented. (See *Ferguson v. Caldwell* (1975), 233 Ga. 887, 213 S.E.2d 855.) In *Ferguson* the reviewing court held that consent, once legally obtained, ought to continue until revoked or otherwise withdrawn. (See also *Phillips v. State* (Alas., Nov. 28, 1980), ___ P.2d ___, 28 Crim. L. Rep. 2315.) We will not engage in a further recitation of the evidence adduced at the hearing to suppress but will note that the record is devoid of any evidence that the defendant ever withdrew or limited his original consent to search the apartment.

Having determined that the searches of the defendant's apartment were proper, it follows that his confession was not tainted, and it should not have been suppressed.

For the reasons set forth the orders of the Circuit Court of Will County granting the defendant's motion to suppress evidence and his confession are reversed and this case is remanded for further proceedings.

Reversed and remanded.

HEIPLE, J., concurs.

Mr. JUSTICE STOUDER, dissenting:
I respectfully dissent from the majority opinion. The issue of whether or not a consent to search has been given is a factual question to be determined in the first instance by the trial court. (*People v. Cole* (1977), 53 Ill. App. 3d 711, 368 N.E.2d 1308.) The trial court's finding may not be disturbed unless it is against the manifest weight of the evidence. In the instant case, the trial court found that the defendant had not consented to the second search. This finding was not contrary to the manifest weight of the evidence. The testimony given by the defendant at the suppression hearing was that even though he had signed the written consent to search form, it was his understanding that the search would be conducted in his presence. This differed from the testimony presented by the State which was to the effect that there was no such understanding. Clearly, it was a question of fact as to whether or not the defendant consented to the second search, and there was sufficient evidence to support the trial court's finding that the defendant did not consent to the second search. To hold as a matter of law in favor of the prosecution, as the majority does, is to resolve all inferences in favor of the prosecution despite a contrary finding of the trial court. This is not the function of an appellate court. If anything, these inferences must be resolved in favor of the defendant since the trial court found in his favor. Therefore, I would affirm the trial court's finding of lack of consent.